*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BERNARD BENJAMIN TACEY,

      Plaintiff-Appellee,

v

STEPHANIE HELEN TACEY,

      Defendant-Appellant.

UNPUBLISHED
January 24, 2019

No. 345081
Bay Circuit Court
LC No. 17-007419-DM

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

PER CURIAM.

Defendant appeals by leave granted an August 10, 2018 order directing that the parties' two children, seven-year-old TT and five-year-old BT, attend school in Bay County, which is where plaintiff lives, during the 2018-2019 school year. During the 2017-2018 school year, the children attended school in Kent County, which is where defendant lives. We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff filed for divorce on September 1, 2017, after defendant and the children left the marital home in Bay County, due to plaintiff's alleged physical abuse, and moved into the home of defendant's mother in Kent County. Following a hearing in September 2017, the trial court denied plaintiff's emergency motion to require that the children attend school in Bay County for the 2017-2018 school year. Instead, the court ordered that the children would attend school in Kent County. Pending a determination of custody, the court entered a stipulated order in September 2017 regarding temporary parenting time. Plaintiff was allowed parenting time on two consecutive weekends, followed by defendant having parenting time the succeeding weekend. On December 11, 2017, the court ordered that plaintiff would be allowed daily telephone contact with the children between 7:00 and 7:30 p.m.

A contested custody hearing was held over two days in July 2018. After the parties presented their proofs, the trial court made findings on each of the best-interest factors in MCL 722.23. As relevant to this appeal, the court found that the children were not of sufficient age to express a reasonable preference, MCL 722.23(i), and that MCL 722.23(j) favored plaintiff

because defendant was "tak[ing] substantial efforts" to interfere with plaintiff's relationship with the children. The court found that it was in the children's best interests to have both parents actively involved in their lives and stated that it was going to "set up . . . a scenario that will allow that to happen" by ordering that the children attend school in Bay County beginning with the 2018-2019 school year. On August 10, 2018, the court entered an order to that effect but did not make a final determination on custody and parenting time. The court acknowledged that if defendant did not move back to Bay County, "this would . . . necessarily result in a change of custody, and I do find that there are substantial and compelling reasons for doing so; having said that, it doesn't have to occur that way if the mother relocates, which I strongly encourage her to do." The court continued:

> Having said that . . . I think that is . . . the decision that would drive all other aspects of this case, including how much parenting time, and who has primary custody, and what to do about legal custody; and that will depend, in large part, on what decision the mother makes about whether or not she's gonna move, because if they're going to go to school here, they're gonna have . . . to live here.

Defendant filed an emergency application for leave to appeal the trial court's August 10 order. This Court granted the application and also granted defendant's motion for a stay pending resolution of this appeal. *Tacey v Tacey*, unpublished order of the Court of Appeals, entered August 23, 2018 (Docket No. 345081). Accordingly, a final determination of custody and parenting time has not yet been made.

## II. STANDARD OF REVIEW

"In child custody-disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011), quoting MCL 722.28. The great weight of the evidence standard of review instructs that "the trial court's determination will be affirmed unless the evidence clearly preponderates in the other direction." *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). In child custody matters, an abuse of discretion occurs where the result is " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Shulick v Richards*, 273 Mich App 320, 324-325; 729 NW2d 533 (2006), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). "Clear legal error" occurs when the trial court chooses, interprets, or applies the law incorrectly. *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994).

## III. STANDARD OF PROOF

Defendant first argues that the trial court erred by applying an incorrect standard in determining that it was in the children's best interests to attend school in Bay County. Although defendant characterizes this issue as one involving a decision on a "motion" to change the children's school district, the trial court's order was entered during a contested hearing to decide the issues of custody and parenting time related to the parties' divorce. The trial court entered the order addressing only the children's schooling, presumably due to the imminent start of the

2018-2019 school year, and it intended to decide later on the ultimate issues of custody and parenting time. Nonetheless, the court's order required that the children attend school in Bay County and did, in effect, change the children's school district. When a trial court changes a child's school, it must determine whether the change would modify an established custodial environment. *Pierron v Pierron*, 486 Mich 81, 85-86, 92; 782 NW2d 480 (2010). If so, the parent proposing the change bears the burden of establishing by clear and convincing evidence that the change is in the child's best interests. *Id*.

After examining the best-interest factors in MCL 722.23, the court found "that there are substantial and compelling reasons to make a change here." The "change" to which the court was referring does not appear to be to the school but, rather, to the community in which the children would reside. Indeed, the trial court found that "there's need to change the . . . location of the children" nearer to plaintiff and that it was going to set up "a scenario that's gonna allow that to happen." The court acknowledged that whether defendant chose to move to Bay County with the children would have an impact on the court's subsequent decision with respect to custody and parenting time. Although the court did not explicitly state that an established custodial environment existed with defendant, it implied that such an environment existed, stating, "And that to the extent that there's been a custodial environment established in the last year, it's unhealthy for the children and there's need to change the . . . location of the children." The court's consideration of the best-interest factors also suggests that the court found the existence of an established custodial environment with defendant.

"The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c); see also *Pierron*, 486 Mich at 85-86. Given that the court had previously ordered that the children attend school in Kent County where they resided with defendant, as well as the fact that defendant continued to reside in Kent County, the trial court's order that the children attend school in Bay County clearly would amount to a change of their custodial environment with defendant in Kent County. Thus, the change of schools would change the children's established custodial environment. Therefore, plaintiff had the burden of proving by clear and convincing evidence that the modification was in the children's best interests. We decline to read the court's use of the phrase "substantial and compelling reasons" as being equivalent to "clear and convincing evidence." Therefore, the trial court did not identify the proper standard of proof, thereby committing clear legal error. Accordingly, on remand, the trial court must utilize the proper standard of proof, which means that in order to modify the established custodial environment, such as through the change of school districts the trial court had contemplated below, the court would have to find by clear and convincing evidence that such custodial modification is in the best interests of the children.

## IV. BEST-INTEREST FACTORS

Defendant also argues that the trial court clearly erred in making some of its best-interest findings. Because these best-interest findings are not related to the legal error discussed above and would not otherwise be addressed on the remand related to that issue, we address them. Because we agree with defendant that the trial court erred with respect to two of the best-interest factors, a remand is necessary on these grounds as well.

-3-

If a change of schools would alter a child's established custodial environment, the trial court must consider all of the best-interest factors set forth in MCL 722.23 before changing that environment. *Pierron*, 486 Mich at 93. Defendant disputes the trial court's findings regarding seven of the best-interest factors. However, two of the best-interest factors are of particular relevance to the trial court's decision to change the children's school district, namely, factor (i) and factor (j).[1]

Factor (i) is "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(i). The court found both children to be of insufficient age to express a preference regarding custody. Defendant asserts that the children were of sufficient age to express a preference and the trial court erred by failing to ascertain their preference on where they wanted to attend school.[2] While there is no particular age at which a child is deemed old enough to express a reasonable preference, this Court has held, in the context of a custody dispute, that children over the age of six are generally old enough to express a preference. *Bowers v Bowers*, 190 Mich App 51, 55-56; 475 NW2d 394 (1991). "However, no court has ruled that every child over the age of six actually has the capacity to form a preference. Just as adults may lack the capacity to give competent testimony because of infirmity, disability, or other circumstances, so may a child's presumed capacity be compromised by circumstances peculiar to that child's life." *Maier v Maier*, 311 Mich App 218, 225; 874 NW2d 725 (2015). And, no court has held that a child under the age of six necessarily lacks the capacity to form a preference. Rather, the trial court has an affirmative duty to ascertain whether the child has the capacity to form a reasonable preference and, if so, whether the child has actually formed a preference. *Kubicki v Sharpe*, 306 Mich App 525, 544-545; 858 NW2d 57 (2014); see also *Maier*, 311 Mich App at 224.

In this case, the trial court did not interview the children to determine their capacity to form a preference and simply stated that it found that both children were too young to express a preference. However, the record discloses that TT was turning 7 years of age at the time of the custody hearing. Presumably, that is a sufficient age to express a preference. *Bowers*, 190 Mich App at 55-56. The trial court gave no reason why it believed TT was unable to express a reasonable preference, and there is nothing in the record to suggest that TT lacked the capacity to form a preference. The trial court's failure to interview TT or otherwise obtain her reasonable preference was error requiring reversal. *Id*. BT was 5-1/2 years old at the time of the hearing. He was described by his teachers as a smart child. We note that there is nothing in the record to suggest that he could not formulate or express a reasonable preference. Regardless, the trial court's failure to interview BT to ascertain his capacity for stating his reasonable preference was also error requiring reversal. *Id*.

---

[1] The trial court found that three of the disputed best-interest factors, factors (b), (d), and (e), favored neither party or were equal. The court found that factor (*l*) favored plaintiff. The trial court's findings with respect to these factors are not against the great weight of the evidence.

[2] We note again that the trial court was not considering simply a motion to change schools.

Factor (j) was the focus of the trial court's decision to revisit the issue of where the children would attend school. This factor considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). Citing what it said was defendant's interference in plaintiff's daily phone calls to the children, the court found that defendant had taken "substantial efforts to interfere" with plaintiff's relationship with the children. The court identified that as "probably the biggest issue in this case; that she's unwilling, absolutely, to encourage the parent-child relationship between father and children."

Defendant argues that the evidence does not support a finding that she interfered with the phone calls or that she was not supportive of the relationship between the children and plaintiff, or that she had disrupted plaintiff's parenting time or disparaged him to the children.

Plaintiff testified that his daily calls to his children were being hindered by defendant. He also testified that defendant was always listening in on the phone calls and "always tries to interject herself in our conversation." He stated that defendant would tell him that the children could not talk to him because they were tired or playing, or defendant would tell him that the children would call him back, but they never did. Defendant denied interfering with plaintiff's phone calls to the children. She stated that she would answer the phone if she could, but said there were times when the children were engaged in some activity when plaintiff called. She explained that she was "not gonna pull [TT] out of something to have a pointless conversation that has been going on for a year." She also testified that she would have to "pep talk" TT into speaking with plaintiff. Defendant also explained why the phone calls were difficult for her:

> [T]he fact that he never even was around before, he never called before, he's not calling to talk to the kids, he's calling because . . . how it's making him look, I called every day, that . . . it's all about how people view him or how it makes him look. . . . It's not genuine, and . . . that's what upsets me. That I have to deal with it, to play his games, and so do my children.

Without explicitly stating, it appears that the circuit court found plaintiff to be more credible on this issue than defendant. We will not second-guess a trial court's determination of credibility. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). But that credibility determination is not dispositive.

The trial court also drew general conclusions about defendant having interfered with plaintiff's relationship with the children. For example, the court stated, "I've given you [defendant] substantial time and space to recover and to be safe," and further added, "but, unfortunately, you've used it to try and squeeze the father out of your children's lives." The court did not cite any specific ways that defendant had "squeezed" plaintiff out of the children's lives beyond interfering in daily phone calls.

Plaintiff never claimed that defendant had refused to turn the children over for scheduled parenting times with him. Plaintiff complained that the parenting time schedule in place during the 2017-2018 school year (two weekends on/one weekend off) did not allow him to be involved as much as he wanted to be in the children's school and extracurricular activities. But that was a

consequence of the parties' circumstances, i.e., living far apart—an arrangement that was sanctioned by the court because of plaintiff's prior abuse—dividing up parenting time.

Plaintiff also cited text messages he had received from defendant as evidence that she hindered his involvement in the children's extracurricular activities. Plaintiff claimed:

> If you read through the text messages, you can see every time I tried to offer something, do something, . . . she doesn't give me a good answer. She calls me a dip s**t, she calls me an a**hole, . . . there's no good answer. There's . . . no good questions that I have and no good answers.

The messages do portray defendant as being very angry with plaintiff. She often accuses him of being "delusional," of playing games, of pretending to be a good parent, and "[t]rying to create these texts for court or something." And she also uses invectives and vulgar language with frequency. The messages also capture disagreements on matters like the time and place where the parties will exchange the children, plaintiff's phone calls with the children, and exchanging personal property. But there are no clear examples of defendant interfering with plaintiff's involvement in the children's extracurricular activities.

The trial court stated that "[i]f things continue, the father will be iced out of the children's [lives] forever. It . . . will be not in their best interest. I specifically believe that, even with his history, it is very much in the children's best interest that the father be involved very much . . . in their [lives]." It is clear from defendant's testimony that she would prefer to limit the interactions she and the children have with plaintiff. Thus, her willingness to foster and encourage the children's relationship with plaintiff was a legitimate concern. Her ability to do so is also called into question by the obvious contempt she shows for plaintiff. Given the prior abuse she suffered, these feelings are understandable.

But the evidence that defendant had actively thwarted plaintiff's relationship with the children is not clear, which in turn calls into question the court's conclusion that changing the children's school district was necessary to forestall plaintiff from being "iced out of the children's [lives] forever." Even crediting that defendant made it difficult for plaintiff to contact the children by telephone, there is no evidence that defendant did not adhere to the parenting-time schedule that was in place. Indeed, the parties were apparently able to agree on swapping weekend parenting times so that plaintiff could take TT to a school dance. There also was no allegation that defendant was manipulating the children by poisoning their minds as to the type of person and father plaintiff is. It is clear that defendant would prefer that the children have limited contact with plaintiff, but there is no evidence to show that this preference has been realized in the interactions that the children have had. Accordingly, the trial court's finding that factor (j) favored plaintiff because defendant actively thwarted plaintiff's relationship with the children is against the great weight of the evidence.

In sum, we conclude that the trial court committed clear legal error on a major issue when it failed to identify and apply the proper standard of proof—clear and convincing evidence—when deciding whether it would be in the children's best interests to change schools (and move). The trial court also erred when it failed to interview the children to determine whether they had the capacity to state their reasonable preferences related to best-interest factor (i) and when it

made its findings related to factor (j), which was the primary factor on which the court relied in finding that it was in the children's best interests to attend school in Bay County. Accordingly, we vacate the August 10, 2018 order and remand this case to the trial court for reconsideration of the best-interest factors under the appropriate standard of proof, and for a determination regarding custody and parenting time. Indeed, it seems apparent that a determination of whether it is in the children's best interests to attend school in either Bay County or Kent County will depend in large part on how the ultimate issue of custody is resolved. On remand, the trial court should consider up-to-date information in its determination of custody and parenting time, including the reasonable preferences of the children and any other changes that may have arisen in the interim period. Because the issues of custody and parenting time may impact the school district that the children will attend, the children are to remain enrolled in their current school district pending further order of the trial court.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel