*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHAN IAN YARDE, JR.,

        Plaintiff-Appellee,

v

SAMANTHA KRISTINE YARDE,

        Defendant-Appellant.

UNPUBLISHED
August 11, 2022

No. 359309
Calhoun Circuit Court
LC No. 2019-002032-DM

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order granting plaintiff's motion for change of domicile. We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant were married in 2012 and are the parents of two minor children, LSY and ELY. The trial court entered a judgment of divorce in January 2020 which provided for the parties to share joint legal custody of the children. The judgment further provided that plaintiff would have primary physical custody, and that the children would reside with defendant for most of the summer, holiday and school breaks. The judgment also provided that the children's domicile would be in Michigan and could not be changed without prior approval of the trial court. At the time of the divorce, defendant, an airman with the United States Air Force, resided in Georgia. Plaintiff and the children lived in Texas for a period of time during the divorce proceedings and had moved to live with plaintiff's mother in Michigan by the time the judgment was entered. Defendant's mother lives across the street from plaintiff's family.

In September 2020, defendant provided plaintiff with paperwork to sign as part of her effort to relocate closer to the children through the Court-Ordered Child Custody Consideration program, an Air Force program intended to help noncustodial parents move closer to their children. Defendant transferred to Ohio in March 2021.

Later in March 2021, plaintiff filed a motion with the trial court for a change of domicile, requesting that the trial court permit him to move the children to Texas. Plaintiff asserted that he had a job opportunity with his cousin, Cory Vore (Vore), who had opened a print shop in which plaintiff had a 5% ownership interest. Plaintiff claimed that defendant's parenting-time schedule would not be affected. Defendant objected to the motion, explaining that she now lived only a $3^1/_2$-hour drive away from the children, as compared to when she lived 13 hours away in Georgia. Defendant argued that plaintiff's income potential in Texas was purely speculative and that he was trying to frustrate her parenting time. Defendant further asserted that she had been planning her move for seven months, with plaintiff's knowledge, in order to exercise more parenting time. Defendant argued that plaintiff had intentionally never discussed with her his plan to move to Texas despite sharing joint legal custody, and noted that she could have moved to Texas if the issue had been raised before she transferred to Ohio; defendant would now be unable to transfer again for several years. Defendant also filed a motion with the trial court for a modification of parenting time to "allow for the maximum amount of parenting time without disrupting the children's school schedules" and to increase child support.

After a series of hearings at which plaintiff, defendant, Vore, and defendant's mother testified, the trial court granted plaintiff's motion to change the children's domicile to Texas. The trial court then granted defendant's motion to increase parenting time, allowing her parenting time during the children's spring break every year, as opposed to every other year. The trial court declined to rule on the motion to increase child support, stating that plaintiff's income would change in "a matter of months . . . . And then we can review it at that particular time." This appeal followed.

## II. MOTION TO CHANGE DOMICILE

Defendant argues that the trial court erred by granting plaintiff's motion to change domicile. We agree.

> Three different standards govern our review of a circuit court's decision in a child-custody dispute. We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error. [*Kubicki v Sharpe*, 306 Mich App 525, 538; 858 NW2d 57 (2014); see also MCL 722.28.]

This Court will affirm a trial court's findings of fact "unless the evidence clearly preponderates in the other direction." *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012)) A trial court's finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted. *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994). "An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). This Court defers to a trial court's credibility determinations. *Id*. This Court specifically reviews for an abuse of discretion a trial court's discretionary decision to permit a parent to move a child out of the state. *Mogle v Scriver*, 241 Mich App 192, 202; 614 NW2d 696 (2000).

This Court has explained the process for a trial court to follow when ruling on a motion to change domicile:

A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio*[1] factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013).]

MCL 722.31 governs the legal residence of children who are subject to a custody order, and it provides, in relevant part as follows:

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (1976), aff'd 144 NJ Super 352 (1976).

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

When considering the MCL 722.31(4) factors, see *Rains*, 301 Mich App at 325, the trial court found that plaintiff's proposed move to Texas had the capacity to improve the quality of the children's and plaintiff's lives. However, beyond finding that plaintiff would potentially earn more money in Texas, which had the capacity to improve the children's lives, see *Rittershaus v Rittershaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007), there was little evidence to support how the move would improve the children's lives. Plaintiff testified that the increased income would allow him to buy things for the children, take them to an amusement park, or have them participate in after-school programs. Plaintiff never testified that the children were without anything that they needed, or even wanted, in Michigan.

Although the trial court found that plaintiff had the potential to earn "six figures" in Texas, Vore's testimony had been that there was an opportunity for the business to earn a "massive" revenue, and that he did sales before and earned six figures, so he thought that plaintiff might be able to earn six figures at some point in the future. Vore did not provide a timeline for plaintiff becoming a manager, although he thought that they might open a second store in their third year, and he also testified that he would be flexible with plaintiff's schedule, allowing plaintiff to work part-time, so it is unclear how much plaintiff would work and, therefore, how much plaintiff's income would increase and benefit the children. Vore thought that the business would pay dividends to plaintiff soon, but that it had not yet done so. Further, another business partner had an outside job, indicating that the new business was not yet as lucrative as plaintiff argued.

It was not established in this case that plaintiff's earning potential was greater in Texas than if plaintiff had chosen to work more hours in Michigan.[2] In Michigan, plaintiff worked 12 hours per week, earning $25.89 per hour. Plaintiff was not guaranteed a certain number of hours per pay period. Plaintiff planned to work 28 hours per week in Texas, earning $1,500 per month, and then full-time once he completed school. Plaintiff would only need to work approximately 60 hours per month, or 15 hours per week, at his job in Michigan to match his initial anticipated monthly income in Texas. Plaintiff also speculated that he would earn more money through commissions on sales and noted that he had a 5% ownership interest in the business. Later, Vore testified that plaintiff would earn $3,000 per month once he worked full-time, in addition to a 20% commission. Vore also testified that plaintiff could start working full-time when he was ready, but there was never a specific time that plaintiff would begin to earn full-time compensation. However, if plaintiff were to work his Michigan job full-time, he would earn approximately $4,142.40 a month. Further, Vore testified that plaintiff would only earn a commission when he went out to make sales, rather than when customers came in to the shop, and there was no basis in the record to determine that plaintiff would consistently earn any amount of commission. Moreover, plaintiff argues that he put the children first by not working full-time when first moving

---

[2] In the trial court, defendant argued that plaintiff had been "voluntarily underemployed and only doing part time employment since the parties' separation" so "full time employment, anywhere, regardless of where it would be, would be a life improvement."

to Dallas and by having a work schedule determined by the children's schedule, which would seemingly detract from his full-time earning potential.

The trial court found that Texas had the benefit of plaintiff only working in one location. Plaintiff testified that his security job in Michigan occasionally required him to work in other cities. However, there was no evidence regarding plaintiff *routinely* working outside out of Battle Creek or that it interfered with his parenting time, even if plaintiff had at some point worked in other cities. Moreover, Vore testified about his plans to expand the business to other areas in a large city and plaintiff making sales outside of the shop. Therefore, plaintiff's assertions, and the trial court's findings, regarding the improvement in the children's lives were largely conclusory and lacking evidence to support them.

Plaintiff argued that the children's lives would be improved because their "aunt by marriage could assist them," but the record shows that grandparents, other aunts and uncles, and cousins currently resided near the children in Michigan. See *Dick v Dick*, 147 Mich App 513, 520-521; 383 NW2d 240 (1985). In Michigan, in addition to being much closer to defendant, the children lived near both sides of their family.

Further, although plaintiff testified that "everything [was] just better," including family, in Texas, plaintiff failed to elaborate as to how, specifically, the children's lives would be improved. For example, plaintiff testified favorably about the LSY's Montessori school in Michigan, and although he later claimed the schools were better in Texas, he did not specify why or how. Plaintiff also testified that the Michigan Montessori school offered field trips, school lunches, and after-school programs, and that the public school the children would have to attend in Texas offered lunches, but plaintiff did not think that the Texas school offered field trips. Instead, plaintiff opined that the location offered "more opportunities," although he did not elaborate. Plaintiff added that he had not looked into some of the offerings of the public school in Texas, but he chose the public school because it had a good pre-kindergarten program, which he knew because Vore's wife "had done a lot of school research." Plaintiff, however, had not spoken to anyone at the school, and he did not know about the curriculum.

Further, plaintiff had unclear plans for housing once he moved to Texas. First, plaintiff testified that he would stay with Vore's family until he could buy a house, which he planned to do by the end of the summer. Plaintiff later testified that he would rent if he needed to, although he had not looked at rentals. At the next hearing, Vore testified that plaintiff would be an independent contractor of the business, so plaintiff would need to rent before he could buy a house. As defendant argues, plaintiff had time to research the real estate, employment, medical providers, schools, travel times, and cost of living between the time that he filed his motion and the time that he testified, but plaintiff provided very little information about those conditions.

On the whole, plaintiff provided little specific evidence to support the conclusion that the proposed change in domicile had the capacity to improve the quality of life for the children, other than the uncertain promise of an increased income. Yet, standing alone, we conclude that the trial court's findings concerning this factor were not against the great weight of the evidence. See *Rittershaus*, 273 Mich App at 466; *Fletcher*, 447 Mich at 877-878.

However, the trial court did make findings that were against the great weight of the evidence on the next two factors under MCL 722.31(4). The next consideration under MCL 722.31(4)(b) is the degree to which each parent had complied with their parenting-time order and whether the proposed move was inspired by the parent's desire to defeat or frustrate the parenting-time schedule. Plaintiff testified that he began speaking with Vore about moving to Texas in October 2020. However, plaintiff did not speak with defendant about the move, and he did not think that it was important for defendant to know that the children were moving to Texas. Instead of informing defendant of his plans, plaintiff, without ever mentioning the potential move to defendant, asked the trial court for permission to move to Texas approximately six months after defendant began the process of moving closer to the children. Plaintiff testified that defendant told him in January 2021 that she was moving to Ohio, but he still did not tell her about the move to Texas because it was already planned and there would be not be "any real benefit" in discussing it. Had plaintiff told defendant about his moving plans at any point in the months that she was preparing her move, defendant could have attempted to move to a base closer to plaintiff's intended destination; defendant testified that there were multiple Air Force bases in Texas to which she could have transferred, but defendant could potentially not be approved for another move for four years after having so recently transferred.

In sum, as soon as defendant had moved to Ohio to be significantly closer to the children, plaintiff, without discussing the matter with defendant, almost immediately sought to move the children to Texas. While the record is not clear that plaintiff knew defendant would be restricted from making another move so soon after he last one, he was undisputedly aware that defendant had undergone a fairly laborious process of obtaining approval for the move in the first place. It certainly appears that plaintiff's plan to change the children's domicile was inspired to frustrate the parenting-time schedule, and the trial court's finding to the contrary was against the great weight of the evidence. *Fletcher*, 447 Mich at 877-878.

Relatedly, the trial court found that it was possible to preserve and foster the relationships between each child and parent and that each parent was likely to comply with the modification. See MCL 722.31(4)(c). Defendant had only lived in Ohio for a matter of weeks when plaintiff moved the trial court to permit him to the move the children to Texas. However, defendant exercised all of her parenting time, including extra weekends, in the time that she lived there. Moreover, defendant also testified that she would need to take leave time in order to facilitate the transportation of the children and parenting time, if their domicile were changed to Texas. Defendant's proposed home in Texas was approximately 14 hours from defendant's home in Ohio.

The trial court's essential error in analyzing the two previous factors was its failure to compare the potential move to Texas to the *current* circumstances of the parties, i.e., that defendant lived in Ohio, was a 3 ½-hour drive away from the children, and could not transfer again for a significant period of time. Instead, the trial court repeatedly compared the proposed move to Texas (14 hours' distance between the parties) to the situation when defendant lived in Georgia (13 hours' distance between the parties). But trial courts are generally required to consider up-to-date information in child custody proceedings. See *Fletcher*, 447 Mich at 889. Moreover, the trial court's findings concerning these factors failed to consider the factors with the children as the primary focus. See MCL 722.31(4); *Brown v Loveman*, 260 Mich App 576, 593; 680 NW2d 432 (2004) (explaining that MCL 722.27 focuses on the best interests of the child and MCL 722.31(4) provides that the courts keep the child as the primary focus when analyzing the factors). Instead,

the trial court focused on the fact that the parties had lived a similar distance apart in the past, and failed to consider the proposed move to Texas in the context of dramatically increasing the travel time for the children when compared to defendant's residence in Ohio. We conclude that the trial court committed clear error in its analysis of these factors, and that the error led to findings that were against the great weight of the evidence. *Fletcher*, 447 Mich at 877-878.

The trial court correctly concluded that the remaining two factors under MCL 722.31(4) were not applicable or did not favor either party. There was no evidence presented that either party was motivated by an attempt to secure a financial advantage over the other, and no evidence of domestic violence. MCL 722.31(4)(d)-(e).

Because the trial court's findings for at least two of the MCL 722.31(4) factors were based on a legal error and against the great weight of the evidence, we conclude that the trial court abused its discretion by finding that a preponderance of the evidence supported plaintiff's motion for a change of domicile. See *Rains*, 301 Mich App at 325. Had the trial court properly determined that plaintiff did not establish that the factors in MCL 722.31(4) supported the move, the trial court would not have needed to consider the custodial environments or best-interest factors. See *id*. We therefore need not address the trial court's holdings concerning those issues. The trial court's order granting plaintiff's motion for change of domicile must be vacated.

Defendant also argues that the trial court erred when ruling on her motion to modify parenting time. It appears from our review that the trial court's determination regarding this motion was inextricably tied to its decision to grant plaintiff's motion to change domicile. Nonetheless, the trial court's decision to increase defendant's parenting time slightly does not, in and of itself, represent an abuse of discretion. See *Shade v Wright*, 291 Mich App 17, 30-31; 805 NW2d 1 (2010). We see no need to address the parenting-time issue in depth at this time, when the issue is better explored on remand with reference to up-to-date information. See *Fletcher*, 447 Mich at 889. Similarly, because the trial court declined to rule on defendant's motion to increase child support based on the pending change of domicile, that issue may also be explored on remand.

Vacated and remanded for further proceedings consistent with this opinion. This court retains jurisdiction.

/s/ Michelle M. Rick
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien

-7-

# Court of Appeals, State of Michigan

## ORDER

JONATHAN IAN YARDE JR V SAMANTHA KRISTINE YARDE

Docket No. 359309

LC No. 2019-002032-DM

Michelle M. Rick
Presiding Judge

Mark T. Boonstra

Colleen A. O'Brien
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court shall address the issue of parenting time, with reference to up-to-date information, as well as defendant's motion to increase child support. The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

August 11, 2022
Date

_____
Chief Clerk