KUBICKI v SHARPE

Docket No. 317614. Submitted August 5, 2014, at Detroit. Decided
     August 28, 2014, at 9:00 a.m.

DLS was born in 2002 to Holly Westmoreland (now Holly Kubicki)
     and Dale Sharpe, Jr. The parties never married and only lived
     together briefly. In 2005, the parties consented to a judgment in
     the Wayne Circuit Court, Family Division, that awarded Holly sole
     legal and physical custody of DLS and granted Dale reasonable
     parenting time. In 2006, Dale moved for a change of custody. The
     court entered an order that Holly and Dale share joint legal
     custody and that Holly had primary physical custody. In November
     2012, Dale again moved to modify the custody order on the basis
     that Holly planned to join the United States military. Dale sought
     primary physical custody while Holly was training or deployed
     outside southeastern Michigan. A hearing referee determined that
     Dale had failed to establish grounds warranting a custody review.
     Dale objected to the recommendation of the referee and the circuit
     court scheduled a hearing. Before the hearing was held, Holly filed
     a motion for a change of domicile. The court entered an order
     expanding Dale's parenting time on January 11, 2013. The court
     scheduled a single hearing concerning the custody and domicile
     motions and did not address Dale's objections to the referee's
     recommendation. Dale filed a motion seeking to modify the Janu-
     ary 11, 2003 order, alleging that he had only recently learned that
     Holly's husband, Daniel Kubicki, had been arrested and charged
     with domestic violence two years earlier and had pleaded guilty to
     a charge of killing an animal and been sentenced to probation. On
     May 3, 2013, the court entered an order awarding Dale temporary
     custody and Holly weekend parenting time. The order stated that
     it would remain in force and effect until there was a decision on
     Holly's motion for a change of domicile. An evidentiary hearing
     was conducted in June 2013. In July 2013, the court, Lynne A.
     Pierce, J., entered an opinion and order modifying parenting time.
     The court prefaced its legal conclusions with the statement that
     because of Holly's active military duty, the court could not consider
     a motion to change custody and would treat Dale's motion as a
     motion for a change of parenting time. The court determined that
     Daniel Kubicki's proposed status as DLS's primary caregiver, his

mental health diagnosis, his failure to complete treatment, and his conviction for killing an animal were a change of circumstances sufficient to reevaluate custody. The court noted that to consider a change of parenting time amounted to considering a request to change the child's placement to Dale's home. The court quoted the language of MCL 722.27(1)(c) that provides that when a parent is in active military duty the court may enter a temporary custody order if there is clear and convincing evidence that it is in the best interest of the child. The court stated that it had to determine if a temporary change of placement was in the child's best interest and that Dale must show this by clear and convincing evidence. The court, noting that Holly had asked for a change of domicile to Kansas, found that it was appropriate to apply the best interest factors provided in MCL 722.23, because a change of placement to Dale's home amounted to a change of the child's established custodial environment. The court proceeded to consider the best interest factors and determined that Factors (a), (b), (c), (e), (h), and (j) favored the parties equally, Factor (d) slightly favored Dale, Factors (f), (g), (k), and (*l*) favored Dale, and Factor (i) would not be considered because the parties did not want the court to interview the child. Following consideration of the factors applicable to a change of domicile provided in MCL 722.31(4), the court held that Holly had failed to show by a preponderance of the evidence that a change of domicile was warranted and that Dale had presented clear and convincing evidence that a temporary change of placement was in the child's best interest. The court entered an order that the parties continue to share joint custody, with Dale having temporary physical placement of the child until further order of the court. Holly appealed.

The Court of Appeals *held*:

1. The limitation on custodial changes stated in MCL 722.27(1)(c) applies only if a motion for a change of custody is filed during the time a parent is in active military duty. The statute did not foreclose a custodial change in this case because Dale sought to change the child's custody before Holly enlisted. The circuit court incorrectly concluded that Holly's intervening deployment deprived it of authority to change custody of the child.

2. The circuit court employed the analysis required for a custodial change despite inaccurately styling its order as merely concerning parenting time.

3. The trial court implicitly found that the child's established custodial environment lay either with Holly or with both parents.

4. Except with regard to Factors (f) and (i), the trial court's factual findings regarding the best-interest factors set forth in

MCL 722.23 are well supported by the evidence. The best-interest analysis called for in motions to change domicile is identical to that required for motions to change custody. The touchstone for both is the child's best interest.

5. The great weight of the evidence supports the trial court's decision to score Factor (e) as favoring the parties equally. Factor (f) concerns the moral fitness of the parties and focuses on moral fitness as a parent. On remand, the trial court must confine its evaluation under Factor (f) to the moral fitness of Holly and Dale as parents. Kubicki's conduct and mental health should not be considered under this factor.

6. The trial court erred by failing to consider under Factor (i) the 10-year-old child's preference. The order of the trial court is vacated and the matter is remanded for a new custody hearing.

Vacated and remanded.

1. CHILD CUSTODY — MOTIONS TO CHANGE CUSTODY — PARENT'S ACTIVE MILITARY DUTY.

The limitation on custodial changes stated in MCL 722.27(1)(c) applies only if a motion for a change of custody is filed during the time a parent is in active military duty.

2. CHILD CUSTODY — BEST INTERESTS OF THE CHILD.

Factor (f) of the factors to be considered in determining the best interests of the child under MCL 722.23 concerns the moral fitness of the "parties" and focuses on moral fitness as a parent.

3. CHILD CUSTODY — BEST INTERESTS OF THE CHILD — REASONABLE PREFERENCE OF THE CHILD.

When a court deems a child to be of sufficient age to express a preference, a factor that a trial court must consider in determining the best interests of the child involved in a custody dispute is the reasonable preference of the child (MCL 722.23(i)).

*Robert A. Switzer* for plaintiff.

*Law Offices of Suzanna Kostovski* (by *Suzanna Kostovski*) for defendant.

Before: GLEICHER, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM. This child custody dispute requires us to construe a provision of the Child Custody Act intended to safeguard the custodial rights of a parent called to active military duty. Holly Kubicki, an active-duty member of the United States Army, contends that by placing her son in the temporary custody of his father, the circuit court deprived her of the statute's protection. Because the father filed a change of custody motion before the mother was called to active duty, we find the relevant statutory language inapplicable. Nevertheless, we must vacate the custody order and remand for a new evidentiary hearing, as the court failed to consider the child's wishes.

### I. UNDERLYING FACTS AND PROCEEDINGS

DLS was born in 2002 to plaintiff, Holly Westmoreland (now Kubicki), and defendant, Dale Sharpe, Jr. The parties never married. Holly and Dale briefly lived together with the child.[1] In 2005, they consented to a judgment awarding Holly sole legal and physical custody and granting Dale "reasonable parenting time[.]"

In 2006, Dale moved for a change of custody. He asserted that Holly had established a coguardianship of the minor child with her sister and brother-in-law and that due to Holly's living arrangement, the child "does not have his own bedroom or bed." Holly retorted that she obtained the guardianship so that the child would have health insurance, maintaining that Dale, whose child support payments were substantially in arrears, had consented to it. She denied that her son lacked an appropriate place to sleep. The circuit court terminated

---

[1] For the sake of clarity and ease of reference, we refer to the parties by their first names.

the guardianship and ordered that Holly and Dale share joint legal custody, with Holly having primary physical custody.

Dale again moved to modify DLS's custody in November 2012.[2] He averred that Holly planned to join the United States military, which "will either require physical displacement of the minor son and complete disruption of the established custodial environments with both parents, or he will be left in the custody of his step-father."[3] According to the motion, DLS expressed a preference to live with his father "if his mother is absent." Dale requested an order stating that when Holly "is in training or deployed outside southeastern Michigan in the U.S. military, [Dale] will have primary physical custody." A referee ascertained that Holly had enlisted in the Army and would start basic training in January 2013. Holly intended to leave the child with her husband, Daniel Kubicki, during basic training. If subsequently stationed more than 100 miles from her home, Holly planned to file a motion for a change of domicile and to allow Dale expanded parenting time. The referee determined that Dale failed to establish grounds warranting a custody review.

Dale objected to the referee's recommendation and the circuit court scheduled a hearing for January 11, 2013. Before the hearing was held, Holly filed a motion for a change of domicile. She asserted that after completing 12 weeks of basic training she would be deployed more than 100 miles away and that "it would be in the best interests of the child to remain primarily in her

---

[2] Dale had also sought modification of the custody order in 2010, after DLS ran away from Holly's home in the middle of the night. That request was denied.

[3] Dale's motion raised other custodial issues that are not pertinent to our resolution of this case.

family's care and custody during active duty deployment." Holly explained that her "Army-retired husband and their two children" would live in on-base housing and that Kubicki would "assume most housekeeping and child care responsibilities."[4]

It is unclear whether the circuit court conducted the hearing scheduled for January 2013.[5] In an order dated January 11, 2013, the circuit court expanded Dale's parenting time and called for "the step-parent" to "have parenting time during the balance of the month." The court did not address Dale's objections to the referee's recommendation, and instead scheduled a single hearing concerning the custody and domicile motions. In April 2013, Dale filed a motion seeking modification of the January 11, 2013 order. He alleged that he had only recently learned that approximately two years earlier, Kubicki was arrested and charged with domestic violence after shooting Holly's dog. According to Dale's motion, Kubicki ultimately pleaded guilty to a charge of "killing an animal" and was sentenced to two years' probation. The motion further averred that, while in Kubicki's care, the child had been tardy from school on nine occasions and "wears dirty clothes," and that Kubicki did not help the child with his homework.

---

[4] Daniel Kubicki has custody of a child born from an earlier relationship. He and Holly also have a child together.

[5] This Court has struggled to obtain the entire circuit court record in this case. The record initially produced was woefully incomplete. This Court's subsequent record requests have yielded only portions of the missing record items. The circuit court's disorganized and inefficient approach to its basic recordkeeping obligation has unnecessarily delayed and complicated our review. We remind the circuit court that the court rules require production of a complete record, "except for those things omitted by written stipulation of the parties." MCR 7.210(G). No such stipulation was filed. In the future, the circuit court is advised to produce the entire record when requested to do so by this Court.

On May 3, 2013, the circuit court entered an order awarding Dale "temporary custody," with Holly granted weekend parenting time upon her return from basic training. The order concluded: "This order shall remain in force and effect until there is a decision on [Holly's] motion for change of domicile."

At the outset of the June evidentiary hearing, the circuit court characterized the issue presented as involving Holly's change of domicile. The court acknowledged awareness of the pertinent language of MCL 722.27(1)(c) concerning the active military duty of a parent. Regarding Dale's motion to change custody, the circuit court stated:

> One of the other things that we talked about is whether this is a motion for change of custody and whether the Court has to look at all the best interests factors in making a determination on this matter. We will be moving forward with mother's Motion for Change of Domicile, and the Court will be looking at the factors that are involved with that, and then based on the facts the Court will have to make the determination of whether I have to apply the best interests factors to that.

Holly testified that she enlisted in the Army on January 2, 2013, completed basic training, and deployed to Fort Riley, Kansas, in May 2013. She described her job as a cook required her to work from 4:00 a.m. until 1:30 p.m. Holly secured a four-bedroom house on the base located in a community designated for families. She contemplated that Kubicki would care for the children during the morning, pack their lunches, and walk them to school. She would assume parenting responsibilities in the afternoon.

The focus of the hearing then turned to Kubicki's 2011 arrest. Holly recounted that on the day of his arrest, she and Kubicki had a "big fight" about her

12-pound miniature Doberman pinscher. The dog had bitten Kubicki and the children on many occasions, and Kubicki insisted that she get rid of it. The argument escalated. Kubicki took Holly's identification papers and a cable modem. Holly responded by telling Kubicki that she had hidden something of his. The two then fought over a phone charger, which broke. Kubicki threw Holly's dog across the kitchen, and the two moved their dispute outside. While Kubicki choked the dog, Holly bit Kubicki's wrist. Although Holly claimed in a written statement that Kubicki had pulled her hair, she recanted at the hearing, asserting that he merely "pulled" his fingers through it. When she stopped biting Kubicki, she kicked Kubicki's dog. He retrieved a pistol from the home, held her miniature pinscher in the air by the collar, and shot it in the head at point-blank range.

Holly told the police that she tried to leave the home with the children, but Kubicki forbade her from leaving with his son that was born from an earlier relationship. After she called 911, she and the children fled the scene. The police arrested Kubicki and seized two pistols and eight rifles from the home.

The prosecutor charged Kubicki with killing an animal, a four-year felony under MCL 750.50b, and use of a firearm in the commission of a felony in violation of MCL 750.227b. Kubicki pleaded guilty to the charge of killing an animal in exchange for dismissal of the felony-firearm charge. The court sentenced him to a two-year term of probation during which he was ordered to complete an anger-management program and a residential treatment program for posttraumatic stress disorder (PTSD) offered by the Veterans Administration (VA). Holly admitted that Kubicki had never entered the residential treatment program, insisting that he did not suffer from PTSD.

Kubicki explained that he had served for 6 1/2 years in the Army and was medically discharged after a roadside bomb explosion fractured several bones in his cervical spine. The Army considers him 30% disabled and able to work. Kubicki admitted killing the dog, but expressed his belief that he had acted "in self defense from a dog that bit me[.]" Contrary to his wife's testimony, Kubicki conceded that he suffered from PTSD and that he had been treated for this disorder on approximately five occasions before the dog incident. Kubicki acknowledged that his plea agreement required him to obtain residential treatment for PTSD, but claimed that he had not been permitted to enroll because the VA program had no room for him. He claimed that he successfully completed the anger-management class. Despite having been diagnosed with "major depressive disorder" by the VA, Kubicki denied suffering from this condition and admitted that he did not take his prescribed antidepressant medication.

The circuit court engaged in the following dialogue with Kubicki:

*The Court*: . . . [D]o you have something from [the] VA Hospital or can you provide the Court with anything showing that you have completed your treatment for [PTSD] and you're no longer considered to have that condition?

*Kubicki*: I'm sure I can get with Dr. Smith or something on that, your Honor.

*The Court*: You do understand that that's the essence of this case, right?

*Kubicki*: Yes, your Honor.

*The Court*: You do understand that, right?

*Kubicki*: I do now, your Honor.

*The Court*: You understand that the reason we're here is that [Dale] is worried about the safety of his son in your care and custody because of your [PTSD], you do understand that, right?

*Kubicki*: Yes, your Honor.

Dale testified that he works full-time as a diesel technician, is married, and has no other children. He shared his concern that Kubicki would act impulsively due to the PTSD and expressed dismay at the prospect of not being able to see his son regularly.

At the close of the evidentiary hearing, the circuit court first stated:

> [T]here is a statute that says the Court cannot change custody when one parent is in the active military. What the Court can do is order a temporary placement of the child with the other parent if I feel it's appropriate based on clear and convincing evidence which is a fairly high standard of proof. So the Court has to be convinced based on that standard that it would be better that it's in [DLS's] best interests that he stay with his father if I were to make that ruling.

The court then observed that its most recent custody order had only temporarily changed custody, continuing:

> And I want to state for the record that that order really should have said temporary -- that there is a temporary placement with father, that the parenting time -- that he's the primary placement of the child for parenting time purposes, it's not actually a change of custody.
>
> I don't know if I said that as clearly as I could have, but even though the order says temporary custody of the minor child is transferred to [Dale], it's really that the parenting time was changed to allow the child to be at dad's primarily while mom was at her basic training, because this Court doesn't have the authority to enter a custody change under these circumstances.

The court opined that, "from the Court's point of view, this case hinges on whether Mr. Kubicki has received sufficient treatment for the Court to be com-

fortable that [DLS] should continue to be living with his mother." The court explained that it lacked sufficient evidence regarding Kubicki's recovery from his PTSD and directed him to provide documentation regarding the current status of his PTSD within two weeks.

In a subsequent order the court reiterated:

> Daniel Kubicki shall procure and provide to the parties and the court, through [Holly's] counsel, a report by a medical professional or any other information on his diagnosis, treatment plan, and/or medical discharge regarding [PTSD] and Major Depressive Disorder. This must be done by 28 June 2013 or the Court will decide without this information.

In July 2013, the circuit court issued a written "Opinion and Order Modifying Parenting Time[.]" After summarizing the evidence produced during the hearing, the circuit court found that Kubicki had not "sought or obtained any additional treatment for his [PTSD]" since completing the required anger-management therapy. The court continued: "He did not provide the Court with a psychological evaluation nor did he ever attend an in-patient program for [h]is [PTSD]."

The circuit court prefaced its legal conclusions with the statement that: "Due to [Holly's] active military duty this Court cannot consider a change of custody. . . . Therefore, [the] Court will treat [Dale's] motion as a motion for Change of Parenting Time." The court found that Kubicki's proposed status as DLS's primary caregiver, his "mental health diagnosis, his failure to complete treatment, and his conviction for willfully killing the family dog" yielded a change of circumstances sufficient to reevaluate custody. The court continued:

To consider a change of parenting time i[n] this instance amounts to a request to change the child's placement to [Dale's] home. MCL [722.27(1)(c)] states:

. . . [when] a parent is in active military duty . . . the Court may enter a temporary custody order if there is clear and convincing evidence that it is in the best interest of the child.

The Court must determine if a temporary change of placement is in the child's best interest. [Dale] must show this by clear and convincing evidence.

Since [Holly] has asked for a change in domicile to the state of Kansas, this Court finds that it is appropriate to apply the 12 best interest factors, since a change of placement to [Dale's] home amounts to a change of the child's established custody environment.

The court proceeded to the statutory best interests factors,[6] finding that Factors (a),(b), (c), (e), (h), and (j)

---

[6] MCL 722.23 provides the statutory best interest factors "to be considered, evaluated, and determined by the court." These factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

favored the parties equally. Factor (d), the court determined, "slightly" favored Dale, while Factors (f), (g), (k), and (*l*) favored Dale. In regard to Factor (i), the preference of the child, the court stated, "The parties did not want the Court to interview the child. Therefore, his preference has not been considered by the Court."

The court then turned to the *D'Onofrio*[7] factors, observing that Holly was required to show by a preponderance of the evidence that a change of domicile would serve the child's best interest. Although the court found that the move to on-base housing "has the capacity to improve the quality of life for [Holly's] family" and that Holly would likely comply with Dale's increased parenting time, the court apparently determined that Holly had not demonstrated by an evidentiary preponderance that a change of domicile was warranted. The court found that Dale "has met his burden of proof by clear and convincing evidence that a temporary change of placement is in the child's best interest." The court ordered that the parties continue to share joint custody,

---

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

[7] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (1976), aff'd 144 NJ Super 352 (1976). The *D'Onofrio* factors have been codified in MCL 722.31(4). *Rittershaus v Rittershaus*, 273 Mich App 462, 469-470; 730 NW2d 262 (2007).

with Dale having "temporary physical placement of the child until further order of the Court." Holly now appeals.

II. ANALYSIS

A

Three different standards govern our review of a circuit court's decision in a child-custody dispute. We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error. *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994). A clear legal error occurs when the circuit court "incorrectly chooses, interprets, or applies the law . . . ." *Id*. at 881. De novo review applies to underlying issues of statutory interpretation. *People v Smith-Anthony*, 296 Mich App 413, 416; 821 NW2d 172 (2012).

B

Holly first challenges the circuit court's interpretation of the "active military duty" provision of the Child Custody Act, MCL 722.27(1)(c). We agree with Holly that the circuit court misconstrued the statute. The circuit court's flawed legal analysis does not yield a victory for Holly, however, as under the circumstances presented, the statute plainly permitted a custodial change.

We begin by examining the pertinent language of MCL 722.27(1)(c):

> If a motion for change of custody is filed during the time a parent is in active military duty, the court shall not enter an order modifying or amending a previous judgment or order, or issue a new order, that changes the child's

placement that existed on the date the parent was called to active military duty, except the court may enter a temporary custody order if there is clear and convincing evidence that it is in the best interest of the child.

When interpreting a statute, we must discern and give effect to the Legislature's intent. We accomplish this task by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written. *In re Petition of Attorney General for Investigative Subpoenas*, 282 Mich App 585, 591; 766 NW2d 675 (2009).

The circuit court declared that "[d]ue to [Holly's] active military duty this Court cannot consider a change of custody." Contrary to this conclusion, the limitation on custodial changes stated in MCL 722.27(1)(c) applies only "[i]f a motion for change of custody is *filed* during the time a parent is in active military duty . . . ." (Emphasis added.) Dale brought his change of custody motion in November 2012, approximately two months before Holly enlisted in the Army. Because Dale sought to change the child's custody prior to Holly's enlistment, the statute did not foreclose a custodial change. Thus, the circuit court incorrectly concluded that Holly's intervening deployment deprived it of authority to change DLS's custody. Consequently, the circuit court need not have disguised its order by characterizing it as "modifying parenting time," when in reality the order changed the child's custody. Given the timing of Dale's motion, the text of MCL 722.27(1)(c) erected no barrier to this result.

Despite inaccurately styling its order as merely affecting parenting time, the circuit court employed the analysis required for a custodial change. As prescribed in *Vodvarka v Grasmeyer*, 259 Mich App 499, 508-509; 675 NW2d 847 (2003), the court first considered

whether Dale had established a change of circumstances or proper cause for a custodial change under MCL 722.27(1)(c). The court determined that Kubicki's enhanced role in the child's life fulfilled this standard, and Holly has not challenged this finding. The circuit court's consideration of the *Vodvarka* threshold signaled its awareness that custody rather than parenting time was at stake.[8]

The next step in a court's custody analysis requires a determination of the appropriate burden of proof. The child's established custodial environment governs this decision. A court may not modify or amend a previous judgment or issue a new custody order that changes a child's established custodial environment "unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). A custodial environment "is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." *Id.* Whether an established custodial environment exists is a question of fact to which the great weight of the evidence standard applies. *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001). In evaluating this issue, the focus is on the care of the child during the period preceding the custody trial. *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995).

The circuit court failed to articulate any findings specifically identifying DLS's established custodial en-

---

[8] The statutory requirement for a threshold finding of proper cause or a change of circumstances does not necessarily control a case involving modification of parenting time "absent a conclusion that a change in parenting time will result in a change in an established custodial environment." *Shade v Wright*, 291 Mich App 17, 25-27; 805 NW2d 1 (2010). Here, the court failed to clearly elucidate a finding regarding the child's established custodial environment.

vironment. Nevertheless, the court required Dale to prove the child's best interests "by clear and convincing evidence." Thus, the court implicitly found that the child's established custodial environment lay either with Holly or with both parents. Because the court held Dale to the highest standard of proof applicable to custody proceedings, the omission qualifies as harmless error. On remand, we instruct the court to explicitly state its established custodial environment finding and to support it with reference to pertinent facts.[9]

After finding grounds for a custodial evaluation, the circuit court made findings and rendered conclusions regarding the 12 best-interest factors set forth in MCL 722.23. By proceeding in this fashion, the court analyzed the evidence in the manner applicable to custody challenges. We discuss the court's best-interest analysis later in this opinion. For now, it suffices that we discern no *statutory* basis arising from Holly's deployment to disturb the court's finding that a temporary change in custody would serve DLS's best interests.

C

Holly next contends that several of the circuit court's best-interest findings contravened the great weight of the evidence. Except with regard to Factors (f) and (i), we find the court's factual findings well supported by the evidence.

We begin by reviewing the context of the court's best-interest analysis. After deciding that MCL 722.27(1)(c) precluded it from entertaining Dale's mo-

---

[9] The circuit court's "temporary" custodial order may have precipitated a change in the child's established custodial environment. The determination remains intrinsically factual. The existence of the order, standing alone, does not establish a custodial environment. See *Baker v Baker*, 411 Mich 567; 309 NW2d 532 (1981).

tion to change DLS's custody, the circuit court considered Holly's request for a change of domicile. The court's formulation of the relevant domicile inquiry for the most part comported with the procedure set forth in *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013):

> A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.

The best-interest analysis called for in motions to change domicile is identical to that required for motions to change a child's custody. In both circumstances, the touchstone is the child's best interest. In reviewing Holly's best-interest arguments, we remain mindful that "a trial court's findings on each factor should be affirmed unless the evidence ' "clearly preponderates in the opposite direction." ' " *Fletcher*, 447 Mich at 879, quoting *Murchie v Standard Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959), quoting *Finch v W R Roach, Co*, 299 Mich 703, 713; 1 NW2d 46 (1941).

Holly first insists that the circuit court erred by finding that Factor (d), concerning "[t]he length of time the child has lived in a stable, satisfactory environment,

and the desirability of maintaining continuity," slightly favored Dale. The circuit court premised its decision on the facts that "[t]he child has lived his entire life in this area, has attended the same school, has extended family in the area and has thrived here." Holly argues that the court would have found differently had it acknowledged that the child's current stable living environment included her two other children. The circuit court's measurement of this factor as weighing only slightly in Dale's favor suggests a close call and that DLS's relationship with his stepbrother and his half brother played a part in the court's evaluation. The court's findings of fact specifically mention the other two children. "[T]he trial court's failure to address the myriad facts pertaining to a factor does not suggest that the relevant among them were overlooked." *Fletcher*, 447 Mich at 883-884. Accordingly, we find no reason to disturb the circuit court's conclusion.

Holly next contends that the circuit court's findings concerning Factor (e), which addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." Factor (e) requires a court to "weigh all the facts" bearing on which parent likely can "best provide" the child "the benefits of a custodial home that is marked by permanence, as a family unit." *Ireland v Smith*, 451 Mich 457, 466; 547 NW2d 686 (1996). The circuit court found that this factor favored both parties equally, stating that DLS "has lived most of his life with [Holly] and firs[t,] her extended family, and then with her husband and their [two] children. [Dale]'s family has also been a stable family unit." Holly asserts that the court should have given greater weight to the fact that in Dale's custody, DLS would no longer live with the other two children. We find no error. The stability of DLS's living arrangement is at the core of Factors (d) and (e). While DLS would be separated from

his brothers if Dale was granted custody, moving to Kansas would result in a similar environmental disruption. The great weight of the evidence supports the neutrality of Factor (e).

Holly also criticizes the circuit court's finding that Factor (f), which addresses the moral fitness of the parties, favored Dale. The court's brief explanation for this finding provided: "The main concern to the Court in this factor is [Kubicki's] mental health issues and his felony conviction arising out of a dispute with [Holly]." Holly correctly points out that this factor concerns the *parties'* "moral fitness." Further, it focuses on moral "fitness *as a parent." Fletcher*, 447 Mich at 887. In *Fletcher*, the Supreme Court instructed that when evaluating this factor,

> courts must look to the parent-child relationship and the effect that the conduct at issue will have on that relationship. Thus, the question under factor f is *not* "who is the morally superior adult"; the question concerns the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct. [*Id.*]

Kubicki's conduct and mental health may be considered under other best interest factors. On remand, the court must confine itself to an evaluation of the moral fitness of Holly and Dale as parents.

We discern a second error that mandates remand for a new best-interest hearing. The circuit court legally and harmfully erred by failing to consider the child's wishes when it made its best-interest determination. In regard to Factor (i), the court stated, "The parties did not want the Court to interview the child. Therefore, his preference has not been considered by the Court." Regardless whether the parties wished for an interview, the court was affirmatively required to consider the

child's preference. "One of the . . . factors a trial judge must consider in a custody dispute is the reasonable preference of the child, if the court deems the child to be of sufficient age to express preference." *Bowers v Bowers*, 190 Mich App 51, 55; 475 NW2d 394 (1991) (quotation marks and citation omitted). "Children of six, and definitely of nine, years of age are old enough to have their preferences given some weight in a custody dispute, especially where there was a prior custody arrangement." *Id*. at 55-56. At the time of the evidentiary hearing, the child was 10 years old, and as such, was "definitely . . . old enough to have [his] preference[] given some weight . . . ." *Id*. "The trial court's failure to interview the child[] was error requiring reversal." *Id*. at 56. Because the circuit court did not consider DLS's preference, we must vacate the circuit court's order and remand for a new custody hearing. On remand, the court may continue the child's placement with his father if the court again concludes that clear and convincing evidence of the child's best interest supports that placement. In making this determination, the court must reevaluate the child's established custodial environment and must also reanalyze the best-interest factors. In resolving both issues, the court should consider all up-to-date information brought to its attention.

We vacate the circuit court's opinion and order and remand for a new custody hearing. We do not retain jurisdiction.

GLEICHER, P.J., and SERVITTO and RONAYNE KRAUSE, JJ., concurred.