*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH DEVAN DOZIER,

　　　　　　Plaintiff-Appellee,

v

KAYLA MARIA HOWELL,

　　　　　　Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 366894
Wayne Circuit Court
LC No. 18-112214-DC

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Plaintiff, Kayla Maria Howell (mother), appeals as of right the trial court's order granting defendant, Keith Devan Dozier's (father's), motion for sole legal custody and primary physical custody of the couple's minor child, KD. We affirm, in part, and reverse, in part. We remand to the trial court for further consideration of the parties' level of cooperation and agreement.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Mother and father were together for eight years and have one child together, KD, who was born in 2013. When the parties separated in May 2018, both parties resided in Livonia and KD attended Livonia Public Schools. In 2019, father moved south to Southgate, where he lived during the entire pendency of the proceedings. Mother moved north to Saginaw in 2020, and later further north to Midland—moves which caused KD to change schools several times. Father lived with his fiancée and their children. In Saginaw, mother lived alone with KD. Mother moved to Midland to live with her boyfriend and his children.

On July 8, 2020, the trial court entered an order *nunc pro tunc* granting the parties joint legal and physical custody (the "2020 custody order"), with father having parenting time on alternating weekends during the school year and alternating weeks in the summer. The 2020 custody order stated the parties "shall have equal responsibility and decision-making authority with respect to the child's health care [sic], education, religious training and overall welfare." It further ordered the parties to "confer with each other" regarding these issues. In the ensuing years, the parties had difficulty adhering to the order. Consequently, father moved to change parenting

time—a request the trial court perceived as a change in custody, because the request was essentially "flipping" the parties' parenting time arrangement.

After some adjournments and attempts at mediation, the trial court held an evidentiary hearing on father's motion. Thereafter, the trial court entered an order finding proper cause and a change in circumstances existed such that it could revisit the custody arrangement. The trial court further found a change in custody was in KD's best interests and granted father's motion. This appeal followed.

## II. STANDARDS OF REVIEW

There are three standards of review relevant to child custody cases. *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022). We apply the great-weight-of-the-evidence standard to the trial court's factual findings. *Id*. "A finding is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). We review for clear legal error any questions of law. *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. Discretionary rulings, such as those involving custody and parenting time, are reviewed for an abuse of discretion. *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015). An abuse of discretion in child custody cases occurs when "the result [is] so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Id*.; quoting *Shulick v Richards*, 273 Mich App 320, 324; 729 NW2d 533 (2006) (quotation marks omitted, alteration in original).

This case also involves the trial court's interpretation of the Child Custody Act of 1970 (CCA), MCL 722.21 *et seq*. We review questions of statutory interpretation de novo. *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *Id*. at 119 (quotation marks and citation omitted).

## III. FOUNDATIONAL LAW

"The purposes of [the CCA] are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Pennington v Pennington*, 329 Mich App 562, 570-571; 944 NW2d 131 (2019). The trial court acts as a gatekeeper where a parent seeks a change in custody. *Id*. at 571. "[A] trial court may modify or amend a previous child custody order or judgment for proper cause shown or because of change of circumstances if doing so is in the child's best interests." *Id*. (quotation marks and citations omitted).

The threshold question in these cases is whether the moving party demonstrates that proper cause or a change in circumstances exists. MCL 722.27(1)(c); *Merecki v Merecki*, 336 Mich App 639, 645-646; 971 NW2d 659 (2021). "[T]o establish 'proper cause' necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court." *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003). The grounds cited by the moving party "should be relevant to at least

one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being." *Id*. On the other hand:

> [T]o establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Id*. at 513-514.]

After finding proper cause or a change in circumstances, "[t]he next step in a court's custody analysis requires a determination of the appropriate burden of proof." *Kubicki v Sharpe*, 306 Mich App 525, 540; 858 NW2d 57 (2014). To decide the appropriate burden of proof, the court must determine the child's established custodial environment. *Id*. If the proposed change modifies the child's custodial environment, the moving party must present clear and convincing evidence that the change is in the child's best interests. *Id*. If, however, the change will not alter the child's established custodial environment, the moving party is beholden to a lesser standard, and must simply show by a preponderance of the evidence that the change is in the child's best interests. *Pierron v Pierron*, 486 Mich 81, 89-90; 782 NW2d 480 (2010).

The best-interests question is a two-part analysis that requires the trial court first to analyze each of the best-interest factors under MCL 722.23. *Dailey v Kloenhamer*, 291 Mich App 660, 667; 811 NW2d 501 (2011). Second, the court must also "consider the general level of cooperation and agreement between the parties when considering joint custody." *Id*. (quotation marks and citation omitted); see also MCL 722.26a(1)(b).

## IV. PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

Mother contends the trial court erred in finding proper cause or a change in circumstances justified reconsideration of the 2020 custody order. We disagree.

As an initial matter, mother argues the trial court applied the incorrect standard when evaluating father's motions, which father characterized as seeking a change in "parenting time." Mother argues father's motions are more properly classified as motions to change custody. In her view, the trial court failed to see this distinction and applied the lower standard relevant to change-of-custody motions.

Mother is correct that sometimes parties mischaracterize their relief as a change in parenting time, when really what they seek is a change in custody. See, e.g., *Lieberman v Orr*, 319 Mich App 68, 86 and n 9; 900 NW2d 130 (2017). She is also correct that requests to change parenting time are less burdensome than request for changes in custody. *Id*. at 84. But, mother is incorrect that the trial court applied the wrong standard in evaluating father's motions to change

"parenting time." The relevant issue here is whether proper cause or a change in circumstances existed. The standard for evaluating this issue is the same regardless of whether the party requests a change in parenting time or a change in custody. *Id*. at 81-82. Moreover, it appears from the context of its order and on-the-record statements, that the trial court recognized father's motions were more properly characterized as requests to change custody. Thus, there is nothing fundamentally incorrect with the trial court's evaluation of father's motions.

Turning to mother's substantive arguments, the 2020 custody order explicitly outlined the parties' joint legal custody arrangement, stating, in part:

> Joint legal custody means that the parties shall have equal responsibility and decision-making authority with respect to the child's health care, education, religious training and overall welfare. On all matters of importance relating to the child's health care, education, religious training, and overall welfare, the parties shall confer with each other with a view towards adopting and following a harmonious policy and the parties shall make all reasonable efforts to amicably reach decisions that are in the best interest of their child.

In finding proper cause to change this custody arrangement, the trial court cited mother's "unilateral actions" violating the 2020 custody order, and the parties' "inability to communicate." Mother challenges this finding, citing several cases which purportedly held that a parent's violation of a child custody order "does not constitute proper cause or change in circumstances."

There is no "hard or fast rule" regarding a finding of proper cause. *Vodvarka*, 259 Mich App at 511. Rather, the relevant inquiry is whether the grounds presented to change a custodial environment are "of a magnitude to have a significant effect on the child's well-being to the extent that revisiting the custody order would be proper." *Id*. at 512. While the parties' inability to communicate and mother's unilateral decisions certainly appear contradictory to the trial court's 2020 custody order, it is also true that these facts had the potential to "significantly" affect KD's well-being. See, e.g., *Dailey*, 291 Mich App at 666 (concluding the parties' growing disagreements over the child's education and medical treatment constituted a change in circumstances or proper cause). Thus, there is nothing erroneous with the trial court's conclusion that proper cause was established.

Mother goes on to contest the trial court's conclusion that a change in circumstances existed such that the court could have revisited the 2020 custody order. She first disputes the trial court's finding that "the distance between the parties' homes is a sufficient change of circumstances[.]" According to mother, "[a]n intrastate move of less than 100 miles that does not affect the exercise of parenting time is not [a] sufficient . . . change of circumstances." In making this argument, mother mischaracterizes caselaw describing when an intrastate move of less than 100 miles amounts to proper cause or a change in circumstances warranting a new look at a custody order. Although such a move is not dispositive, it may be considered in determining the impact of the move on the child's life and relationship with the other parent. See *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008).

Next, mother argues the trial court improperly relied on the "hearsay" testimony of KD's therapist that KD had issues including "trouble making friends, holding grudges, [and] expressing

-4-

herself in tantrums." Mother says the referenced statement originated from a report by the Friend of the Court (FOC), and because the parties did not stipulate to its admission, the trial court could not consider it in the context of the motion to change custody. Even if the trial court erred in its consideration of the FOC report, see, e.g., *Duperon v Duperon*, 175 Mich App 77, 79; 437 NW2d 318 (1989) (An FOC "report and recommendation is not admissible as evidence unless both parties agree to admit it in evidence[]"), we need not determine the extent of this alleged error. There was other evidence presented throughout the proceedings that suggested KD's mental health was suffering making it necessary to revisit the issue of custody. For example, mother presented evidence of text messages with father informing him KD was "supposedly having behavioral issues."[1]

Mother also claims the trial court wrongly concluded KD did not have a stable residence. Again, the standard is whether the trial court's conclusions are against the great weight of the evidence. *Berger*, 277 Mich App at 706. While mother believes there was "no testimony that the residence changes were due to eviction, financial issues, or some other reason rendering her unable to maintain housing[,]" this does not mean the trial court was incorrect about the stability of mother's housing situation. The record shows that mother moved more than once since the trial court entered the 2020 custody order. Mother's housing situation stands in contrast to father, who maintained the same housing through the same time period.

Mother has failed to demonstrate that the trial court erred in finding proper cause or change of circumstances to revisit the 2020 custody order.

## V. ESTABLISHED CUSTODIAL ENVIRONMENT

Mother next argues the trial court erred in finding KD had an established custodial environment with both parents. She believes KD's established custodial environment was solely with her, because she was KD's primary caretaker. We disagree.

The term "established custodial environment" is defined by MCL 722.27(1)(c):

The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

"An established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Berger*, 277 Mich App at 707. "A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Id.*

---

[1] It is also notable that, while mother raised the question of KD's mental health in her motion for reconsideration following the trial court's order changing custody, mother did not specifically challenge the trial court's reference to the FOC report.

Mother's argument on this issue is strange. She complains that the trial court reached the erroneous conclusion that KD's established custodial environment was with both parents. In her view, the trial court should have concluded KD's established custodial environment was solely with mother. Whether the trial court decided KD's established custodial environment was with both parents, or solely with mother, it would have reached the same conclusion—that the standard by which to judge the best-interest factors is clear and convincing evidence. *Kubicki*, 306 Mich App at 540. Thus, it is moot whether the trial court wrongly decided KD's established custodial environment was with both parents. See, e.g., *In re AGD*, 327 Mich App 332, 353; 933 NW2d 751 (2019) (quotation marks and citation omitted) ("A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy.").

At any rate, the trial court did not err in concluding KD had an established custodial environment with both parents. Since the parties' May 2018 separation, KD has spent alternating weekends with father during the school year and alternating weeks with father in the summer. There was also testimony that KD spent extra time in father's care when schools and childcare centers closed during the pandemic because father could work remotely and supervise KD. Although mother may have borne the brunt of tending to KD's healthcare and education, father also provided for KD while in his care. This evidence sufficiently demonstrates an established custodial environment with both parents.

## VI. BEST INTERESTS

Finally, mother challenges the trial court's finding that a custody modification was in KD's best interests. We agree, in part, and disagree, in part.

The final step in determining whether a change in custody is warranted is evaluating whether the change is in the child's best interests. This is a two-step process which first requires an assessment of "the sum total" of each of the factors under MCL 722.23. MCL 722.26a(1)(a). In reviewing the trial court's findings under these factors, we "defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Berger*, 277 Mich App at 705. The second step requires an evaluation of the parties' ability to cooperate with each other. MCL 722.26a(1)(b).

### A. BEST-INTEREST FACTORS

### 1. FACTOR (B)

Mother first challenges the trial court's conclusion that Factor (b) favored father. This factor analyzes "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court determined Factor (b) favored father because "at the beginning of the pandemic, [KD] resided mostly with [father], as he was able to work from home and supervise [KD's] remote learning." By contrast, the trial court found that mother's successive moves in a short period of time were not "child-focused," and instead centered on mother's own interests. Mother's decision to move created a more than two-hour drive between the parents' respective homes. These moves also caused KD to "attend three schools in two years."

Mother challenges the trial court's conclusions, citing its failure to consider father's alleged deficits in this area—specifically, the testimony showing father's refusal to participate in KD's education and therapy. Mother apparently believes the trial court erred by failing to explicitly opine about this testimony. But, a trial court's "conclusions need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005). Further, while there was evidence demonstrating father attended few, if any, of KD's school or medical appointments after mother moved to the Saginaw/Midland area, that does not mean the trial court erred in its evaluation under Factor (b). Father testified, and mother agreed, that mother did not inform father of KD's medical appointments. Even if he was informed of an appointment, the distance caused by mother's move made father's attendance difficult. Moreover, the evidence showed father was more equipped to offer KD educational consistency because father's living situation was more stable than mother's. Mother had moved multiple times throughout these proceedings, causing KD to move schools, while father remained in the same home. Given this information, the evidence does not clearly preponderate in the opposite direction of the trial court's finding that Factor (b) favors father. *Berger*, 277 Mich App at 705.

## 2. FACTOR (C)

Mother next challenges Factor (c), which the trial court found favored both parties. Factor (c) contemplates "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). Mother argues that the trial court should have found this factor in her favor. She says what tipped the scales in her favor was her testimony that father was uninterested in KD's medical care and mental health services.

Contrary to mother's assertions, father testified he was interested in KD's care, but that mother failed to inform him of her appointments, or request financial assistance in these areas— facts mother confirmed in her testimony. Mother suggests on appeal the trial court should have afforded more weight to her testimony that father refused to participate in KD's medical care. But, again, this Court "defer[s] to the trial court's credibility determinations." *Safdar v Aziz*, 342 Mich App 165, 176; 992 NW2d 913 (2022). The trial court obviously found father's testimony more credible than mother's, and we will not reverse on this basis.

## 3. FACTOR (D)

Mother next challenges the trial court's findings as to Factor (d), which the trial court found "strongly" favored father. Factor (d) considers "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). Mother specifically challenges the trial court's findings that father owned his home, and that KD had "difficulty" living with the children of mother's boyfriend. She says these assertions are not supported by the record, and are therefore erroneous.

Whether these conclusions were erroneous is not dispositive on the ultimate question whether the trial court erred in finding Factor (d) favored father. It is undisputed that, during the relevant time period, father maintained the same residence with his fiancée and their children. During the same time period, mother moved at least twice to two different cities. Each of these

moves caused KD to change schools. Thus, it was not against the great weight of the evidence for the trial court to conclude father was better suited to provide a stable environment for KD.

## 4. FACTOR (H)

Mother next challenges the trial court's findings under Factor (h), "[t]he home, school, and community record of the child." She says there was no evidence to support the trial court's conclusion that KD's behavioral challenges at school were because she moved away from father. The trial court's finding was not based on father's active benefit to KD's home, school, and community record, but rather on the detrimental effect of mother's life choices on KD's home, school, and community record. The trial court reviewed the testimony and evidence regarding KD's behavior at school and determined KD had not adjusted well after the moves. Although mother finds this analysis unfair given her active efforts to secure treatment for KD, the court's finding is supported by the evidence and was, therefore, not erroneous.

## 5. FACTOR (J)

Mother also disputes the trial court's findings under Factor (j), which considers "the willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." In finding this factor favored father, the trial court specifically found mother's behavior "extremely controlling" and unreasonable. It noted that sometimes mother would withhold KD from father, and that mother refused to inform father of KD's therapy or her decisions to change KD's school. By contrast, the trial court concluded father was "more than willing" to help mother when needed, such as by taking on extra parenting time.

During their testimony, the parties presented conflicting accounts of these conclusions. Mother said she informed father of KD's therapy, father said she did not. Mother claimed she discussed the school changes with father, father disagreed. They also testified about father's engagement in parenting time. Father said he was denied parenting time, while mother said she made every effort to engage father in parenting time. These issues clearly came down to credibility determinations, which the trial court was more equipped to assess, and this Court cannot resolve on appeal. *Berger*, 277 Mich App at 705.

Mother also cites father's earlier personal protection order (PPO), apparently believing the trial court should have considered it and factored father's "anger" toward mother in this portion of the analysis. The trial court was plainly aware of father's PPO history, having granted one PPO in mother's favor. Despite this knowledge, the trial court still found this factor favored father. It is not necessary for the trial court to comment on every piece of evidence, in particular where it was aware the circumstances at issue.[2] See *Kessler v Kessler*, 295 Mich App 54, 65; 811 NW2d 39 (2011) (quotation marks and citation omitted) ("A trial court's failure to discuss every fact in

---

[2] We further note the trial court expressly considered father's PPO history when analyzing other factors.

evidence that pertains to a factor does not suggest that the relevant among them were overlooked."). Thus, the evidence does not clearly preponderate in mother's favor as to Factor (j).

### 6. FACTOR (*L*)

Finally, mother challenges the trial court's findings as to Factor (*l*), which considers "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." Under this factor, the trial court noted mother's purposeful decisions to evade her coparenting duties. The court also formed an opinion regarding father's hostility and his improper focus on his rights over KD's interests. Weighing the stances against each other, the trial court found this factor favored father. This was a subjective opinion about the parties' credibility and was supported by evidence. We may not interfere with that judgment. See *Safdar*, 342 Mich App at 177.

### B. COOPERATION AND AGREEMENT

As noted above, a trial court's analysis of the best-interest factors also requires consideration of "the general level of cooperation and agreement between the parties when considering joint custody." *Dailey*, 291 Mich App at 667; see also MCL 722.26a(1)(b). The trial court did not cite this standard in the final opinion or order or address its elements. It must do so on remand. See, e.g., *Molloy v Molloy*, 243 Mich App 595, 607; 628 NW2d 587 (2000), vacated in part on other grounds 466 Mich 852 (2002) (the failure to consider the parties' level of cooperation and agreement is a "clear legal error" requiring remand).[3]

Affirmed, in part, and reversed, in part. Remanded for the limited question of the parties' level of cooperation and agreement. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Anica Letica

---

[3] Mother also contends the trial court did not address the award of physical custody. This is inaccurate. After analyzing the best-interest factors of MCL 722.23, the trial court determined that changing KD's established custodial environment (i.e., changing the physical custody arrangement) was in KD's best interests.