*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOUGLAS PEEL,

      Plaintiff/Counterdefendant-Appellee,

v

ANN SHOEBOTTOM,

      Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
May 30, 2024

No. 368161
Clare Circuit Court
LC No. 2023-900073-DC

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order granting the parties joint legal and physical custody of their minor child, IP. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The parties, who were never married, dated for approximately seven-and-a-half years before their relationship ended. IP was born in 2016, while the parties were still dating. For the length of the parties' relationship, and for the entirety of IP's life, the parties and IP lived in plaintiff's house with his daughter from a prior relationship. When the parties separated and defendant moved out with IP, plaintiff and his daughter continued to live in the house. Defendant allowed plaintiff to have parenting time for several weeks before she stopped parenting time altogether. Plaintiff filed a custody complaint after defendant told him that she had been offered an opportunity to move out of state.

Following a Friend of the Court (FOC) hearing, the referee recommended that the parties have joint legal and joint physical custody of IP with a week on, week off parenting time schedule. The parties stipulated to a parenting time agreement after the hearing that allowed plaintiff to have overnight visits. At the subsequent bench trial, the trial court ordered the parties to have joint legal and joint physical custody of IP. This appeal followed.

## II. STANDARDS OF REVIEW

This Court applies three standards of review to child custody cases. *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022). We utilize the great-weight-of-the-evidence standard to evaluate the trial court's factual findings. *Id*. "A finding is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). "Questions of law are reviewed for clear legal error." *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. Discretionary rulings, such as those involving custody and parenting time, are reviewed for an abuse of discretion. *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015). An abuse of discretion in a child custody case happens when "the result [is] so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Id*.; quoting *Shulick v Richards*, 273 Mich App 320, 324; 729 NW2d 533 (2006) (quotation marks omitted, alteration in original). Lastly, we review issues of statutory interpretation, such as the trial court's interpretation of the Child Custody Act of 1970 (CCA), MCL 722.21 *et seq*., de novo. *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *Id*. at 119 (quotation marks and citation omitted).

## III. BEST-INTERESTS FACTORS

On appeal, defendant argues that the trial court's findings of fact concerning the best-interests factors were against the great weight of the evidence, and that it abused its discretion by awarding the parties joint legal and joint physical custody. We disagree.

When a parent moves to change custody, the trial court should consider whether there is "proper cause" or a "change in circumstances" under MCL 722.27(1)(c). *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003). If either exists, the next question is whether there is an established custodial environment. MCL 722.27(1)(c); see also *Vodvarka*, 259 Mich App at 509. The final question is whether a change in custody is in the child's best interests. MCL 722.23. If a proposed change modifies a child's established custodial environment, the trial court may not modify custody unless there is clear and convincing evidence that doing so is in the child's best interests. MCL 722.27; *Kubicki v Sharpe*, 306 Mich App 525, 540; 858 NW2d 57 (2014). But, if the change does not alter the child's established custodial environment, the moving party must only show the change is in the child's best interests by the lesser standard of a preponderance of the evidence. *Pierron v Pierron*, 486 Mich 81, 89-90; 782 NW2d 480 (2010).

In this case, defendant does not dispute whether there was "proper cause" or a "change in circumstances." Similarly, she does not contest that the appropriate burden of proof for proving IP's best interests is clear and convincing evidence. Instead, her argument focuses on whether the trial court properly found that plaintiff's proposed change was in IP's best interests.

"A trial court must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(*i*) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Defendant specifically challenges the trial court's findings as to factors (a), (b), (e), (f), (g), (j), and (k).

Regarding factor (a) (love, affection, and emotional ties), the trial court found this factor did not favor either party. While there was no direct testimony as to the parties' bonds with IP, there was evidence that both parties cared for IP and had a positive relationship with her.

Regarding factor (b) (capacity and disposition to give the child love, affection, and guidance regarding religion or creed), the trial court found this factor did not favor either party because there was no evidence that IP was being raised in a particular religion, and because both parties were able to provide IP with love and guidance. The evidence suggests that both parties were involved in IP's schooling, sports, and clubs, and wished to continue doing so.

Regarding factor (e) (permanence of existing or proposed custodial home), the trial court found that this factor favored plaintiff because of the length of time IP lived in plaintiff's house, and because of defendant's conduct with her new partner. The evidence reflects that IP lived in plaintiff's house for her entire life, and had her own room filled with her belongings. Furthermore, IP was bonded with plaintiff's daughter—her half-sister. By contrast, defendant had only lived in her new home for approximately three months by the time the hearing took place. The evidence also showed that defendant introduced IP to her new boyfriend several times shortly after they began dating, and acted inappropriately with her boyfriend in front of IP. Because plaintiff's house was a place of physical and relational permanency for IP, the trial court's finding was not against the great weight of the evidence. See *Brown v Brown*, 332 Mich App 1, 21; 955 NW2d 515 (2020) (Recognizing that the permanence of the custodial unit is the critical consideration under factor (e)).

Regarding factor (f) (moral fitness), the trial court found that this factor did not favor either party. Both parties admitted to consuming alcohol and using marijuana during their relationship. Plaintiff did not dispute that he had a domestic violence conviction from an incident involving defendant four or five years prior, or that he had a criminal record involving alcohol- and marijuana-related offenses. Plaintiff also did not dispute that he pleaded guilty to drunk driving earlier that year, but noted that he successfully completed his probation, was not consuming alcohol at the time, and was attending counseling. While defendant did not have a criminal record, the trial court found defendant's conduct with her boyfriend and IP concerning. On one occasion, defendant introduced IP to her boyfriend for the first time by having him stay overnight in a hotel with them. On another occasion, defendant acted inappropriately with her boyfriend at IP's Girl Scouts meeting before she left IP there alone.

Regarding Factor (g) (mental and physical health), the trial court found that this factor did not favor either party. As previously discussed, plaintiff does not dispute his recent drunk driving offense. However, at the time of trial, plaintiff had not consumed alcohol since his arrest, had completed his probation, and had been participating in counseling and experiencing a benefit from it. The trial court properly focused on the state of plaintiff's mental health at the time of trial, and there was evidence that he made progress. See *Demski v Petlick*, 309 Mich App 404, 450-451; 873 NW2d 596 (2015) (providing that factor (g) focuses on the parties' *current* mental and physical health).

Regarding factor (j) (willingness and ability to facilitate and encourage the child's relationship with the other parent), the trial court found that this factor favored plaintiff because of defendant's efforts to withhold IP from him. Plaintiff had extremely limited parenting time and visitation following the parties' separation, by defendant's design, and defendant worked to limit plaintiff's connections to IP's extracurricular activities. Conversely, plaintiff expressed a desire to coparent with defendant and stated that he wanted her involved in IP's life as much as possible. While defendant argues on appeal that she withheld IP from plaintiff because of plaintiff's

domestic violence, the trial court disagreed. By defendant's own admission, she and IP lived with plaintiff for several months after their relationship ended, and she initially allowed parenting time with plaintiff after the separation. The stated reasons why defendant stopped plaintiff's parenting time also changed throughout the case, from concerns about plaintiff's suspended license to allegations that plaintiff's house had a broken septic tank.

Regarding factor (k) (domestic violence), the trial court found that this factor slightly favored defendant. But, defendant argues the trial court should have afforded this factor more weight in her favor. Plaintiff admitted to an instance of domestic violence against defendant several years prior and to punching the walls of his house. Further, both parties admitted to arguing with, yelling at, and hitting one another throughout their relationship, although defendant argued she only did so in self-defense. Plaintiff denied the new allegations of domestic violence defendant raised at trial and testified that no other instances of domestic violence had occurred since his domestic violence conviction years prior. In light of the special deference given to the trial court's credibility assessments, *Brown*, 332 Mich App at 9, the trial court's finding that factor (k) slightly favored defendant was not against the great weight of the evidence.

The trial court's findings as to these factors were not against the great weight of the evidence. Therefore, its decision awarding joint legal and physical custody to both parties does not warrant reversal.

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ Thomas C. Cameron